Mr. Cade. Thank you, Judge Easterbrook. Members of the Court, may it please the Court, Attorney Nate Cade here on behalf of Mr. Noeldner. Essentially what this case is about is an assault of a male prisoner by a female guard. The District Court erred because... Could you tell me what provision of the Constitution is violated by sexual relations between prisoners and guards? Well, I think, Judge, we've got the 14th Amendment because he was not convicted yet. He had not been sentenced. We also have state law which bans... Would you tell me what provision of the Constitution? The only thing your brief mentions is state law. And let's assume that state law absolutely bans sexual relations between prisoners and guards. It does. State law is not the Constitution. Correct. And I can't believe there's any rule in the federal Constitution that requires guards to intervene to enforce state law. Indeed, we say, and the Supreme Court says over and over and over, that a violation of state law is just that, a violation of state law. Now, if you were alleging that the guard forced herself on your client, that might be a Fourth Amendment problem. But I don't see any such allegation. This appears to have been consensual, at least so far as anything I could read is. And that leads to my question. What provision of the Constitution of the United States forbids consensual sex between a guard and a prisoner? Well, Judge Easterbrook, I think this is the first time I've ever heard or seen anywhere someone questioning... I know. Both sides seem to assume that state law and the U.S. Constitution are the same thing. So if there is a rule of state law that you can't do something, then there's a rule of federal constitutional law that you can't do something. But the Supreme Court has held over and over and over that state law and the federal Constitution are fundamentally different, and that you can't use the Constitution of the United States to enforce state law. Well, that seems to be what's going on here, a constitutional claim being used to enforce state law. And I'm trying to figure out how that is consistent with the instructions issued by our superiors. Well, I'm going to walk into it backwards, Judge Easterbrook, and I'm doing this on purpose. Your second part was talking about consent. There can be no consent, period. That's as a matter of state law, right? State law may say it is illegal to do X. If state law says it is illegal to enter into a lease in which your daughter is a criminal, take the first case. We wouldn't say that meant there was no lease. Correct. We might have a serious problem about the termination of that lease. Right? Is there any argument? I say I didn't find it in these papers. Are you now contending that the guard forced herself on the prisoner, that this was anything other than actual consent? There are allegations in the papers, Your Honor, that she groomed him in terms of wanting to have sex with him. This is not the first. I have several of these cases where, and I don't understand it, they're all female guards doing this with male inmates. I don't know how you turn around and look at somebody who's incarcerated and say, I'm going to give up my life and be charged with felonies and everything else, knowing they're in there. But to answer your question, one, you have obviously this is the guard acting under color of law. They have the badge. They have the uniform. They have the authority. You have title to that or conjunction with that. You have the 14th Amendment. And as you raised the 4th Amendment, because Mr. Nelner at this time had not been convicted. So it's not even a question of punishment being cruel and unusual. It's any punishment whatsoever against. Look, you're assuming the conclusion. This is called begging the question. You have to have some argument that sex between a guard and a prisoner is a constitutional violation. And you can't just say it's illegal under state law. And that means state law doesn't recognize the consent. We're still in the world of state law. You see my problem, I hope. I see your problem, but I also think you're searching for the question. Because if that was the case, Judge Easterbrook, then we would turn around and say under 1983, if someone shoots somebody, well, the Constitution doesn't say specifically you can't shoot anybody. Therefore, show me where it's illegal. I'm lost. If it's a law enforcement officer shooting somebody in the course of duty, that's sometimes excessive force in violation of the 4th Amendment.  Or so the Supreme Court has held. So point me the equivalent case in which the Supreme Court has held that sex between a prisoner and a guard violates some amendment to the Constitution. I am happy to provide a supplemental brief. This is something you had to consider before you filed a complaint in this case. But you just assumed that any violation of state law is a violation of the federal Constitution. It's just too late when you reach the Court of Appeals to go back and rebuild a case from the beginning. I don't think we assumed, Judge Easterbrook, because we alleged a violation of 1983. And this Court has dealt with... 1983 does not have any independent content. This Court has had numerous cases, hundreds, where there have been sexual assaults by guards. Yes, but this does not allege, your papers do not allege a sexual assault. They allege sexual relations. There is really a difference between those two. There is, but the point, I think, is there can be no sexual relations, there can be no consent. As a matter of state law, which is where we get, everything seems to come back to your state law claim. If this were a federal prison, it would come back to a claim under a regulation, not even a statute. There is a regulation of the Bureau of Prisons for bidding sex between prisoners and guards. But again, federal regulation is not the Constitution. It's a violation of a rule. This may be enforceable in tort litigation in state court, but that's not where we are. Let me tell you my other problem with this case. Please. And it's a decision of the Supreme Court just one week ago today, which includes this line. Our legal system does not impose liability for mere omissions, inactions, or nonfeasance. Although inaction could be culpable in the face of some independent duty to act, the law does not impose a generalized duty to rescue. Now, what this case is all about against everybody other than the guard is a claim of a generalized duty to rescue, which the Supreme Court a week ago said does not exist in the absence of some affirmative duty to act. And that brings us back to the question, where is that affirmative duty coming from? It can't come from state law. No, it's the failure to intervene. That's exactly what the Supreme Court said in Twitter was not actionable. There is no general duty to intervene. It's a nine-to-nothing decision by the Supreme Court a week ago today. There needs to be an independent duty to require intervention. And that leads me back to my original question. Where is the independent obligation? Judge Easterbrook, the Twitter case, and I don't have that citation in front of you, that was under dealing with Section 230 and whether it should be thrown out or not. Actually, Twitter does not depend at all on Section 230. That's a defense. The Supreme Court never reached Section 230. It held there was no claim because Twitter had no obligation to help out the plaintiffs. Section 230 is irrelevant in Twitter. The justices discuss at great length when the law requires intervention to help someone. And that's what your claim is. The holding is there has to be a separate legal duty to assist. I'm asking where that duty comes from. The duty is you have someone who is incarcerated and being held by the state. They're not being held by the state in Twitter. You have an independent organization that they are trying to say you have the Internet. You are responsible. The Supreme Court has said, for example, that if Jones beats up somebody, Jones is responsible, but other people in the chain of command are not. That's the holding of Iqbal, for example. The Supreme Court has said that public officials have no general duty of rescue. That's the holding of DeShaney. That's why I'm asking where is the duty on which you're relying coming from? I could imagine if this were an Eighth Amendment case or it's parallel for pretrial detainees, you would look at Farmer against Brennan and say this is cruel and unusual punishment duty. But under Farmer, that duty depends on having actual knowledge of risk. There's no duty to inquire. Correct. And if I may, Judge, that is the issue here. And I turn to your dissent in the Polk County case in 2020. I'm going to say dissents count for dissents and three bucks will get you a cup of coffee at Starbucks. That's fine. I want to talk about the holdings of the Supreme Court. I understand, and I can't with regards to Twitter and how that interacts and whether that throws out the entire case law and duty to intervene. I don't know the answer to that. Well, that's what the justices said. But I think the critical problem in this case is you have not identified a violation of the Constitution by the guard. And if there's no violation of the Constitution by the guard, I find it impossible to see how there can be a constitutional duty of third parties to detect the violation and intervene. Well, the two things is, one, you say detect, and it's more than detect. They had knowledge and they chose. In Polk County, you specifically, in your dissent, and the reason I told you not to talk about my dissent. Dissents don't count. Dissents don't count, Judge? If you would like to talk about decisions of the Supreme Court, you will find me a receptive audience. These guards did have notice. They had, hey, something is not quite right, and they chose not to report it. They chose to actually not. As Brennan holds, that something is not quite right does not suffice. That doesn't meet the intent requirement. You have to have, Farmer against Brennan holds, actual knowledge of the risk to the prisoner. Anything short of that is insufficient. They did have actual risk. But in any event, you need the basic constitutional violation. They had actual knowledge because their policies and procedures specifically told them. Policies and procedures are not actual knowledge for guards. It's a holding in Farmer. It's a unanimous decision of the Supreme Court of the United States. I'm familiar with Farmer. We have to follow it. Right, but you're saying they don't have knowledge. They said, well, we didn't really know, no. But they did know. They said, hey, something is amiss. And they didn't follow their policy, which said, if you suspect, not you have to have actual knowledge. If you suspect, you report. Maybe it's just we've got the point of no return. Their policy is not the Constitution of the United States. Correct, but you said they have no knowledge. Farmer, what you are arguing is that if they had followed a prison policy, they would have acquired more knowledge. No, I'm saying if they had followed the policy, they would have reported it. And had they reported it, then there would have been an investigation. They turned around and did their own investigation. So it's actually several steps away from more knowledge. Farmer holds that there must be actual knowledge, not they should have known or they should have done more. There must be actual knowledge. Well, they did say throughout their declarations in terms of their knowledge. But rather than act on their knowledge, they turned around and all they did was say, we're going to do our own investigation. There's no nothing in the Constitution and farmer says you're supposed to investigate. There's nothing in the policies that says you're supposed to investigate. They had knowledge, period. Do you think that suspicion is the same as knowledge? No, Judge Rovner, I don't think suspicion is the same as knowledge. But with regards to these particular guards, one of them arguably burn us because he didn't work the same shift normally. You could say, OK, his suspicion because he's hearing it. But for the other two guards, Sackman and Scholes, they specifically communicated with each other. One of them said Scholes told Sackman, you should report this. You should actually take the step and report this up the chain to the sergeant. And rather than do that, Sackman decides I'm going to investigate a little bit more because didn't want to cause embarrassment. And Scholes, they hatched this idea. So in terms of suspicion, it might be burn us. But the other two certainly knew something was wrong. And it doesn't say anywhere that they have to know specifically that they are having sex. Because the whole point is, for causation purposes, is when they had their knowledge, when they acquired it, it was right before the sexual act had taken place. So under a causation theory, a jury could say had they acted at that point in time, they could have stopped the ultimate harm. I see that I'm out of time, unless there's any other questions. Thank you. I used up a lot of your time, so I'll give you two minutes for rebuttal, counsel. Thank you. Ms. Mills. Good morning, Your Honors. May it please the court. My name is Sarah Mills, and I represent the Taylor County defendants, except for Ms. Cheever. She was represented by separate counsel. This case truly rises and falls on the undisputed evidence in the record. And if you look at Document 64, which is… I would see how we get to any potential claim that other guards had to intervene in the absence of a finding that the relations between Taylor and Nelner violate – sorry – between the guard and Nelner violated the Constitution. And I agree with you. I have to say that I was on the JKJ case. I represented the jailer in that case. There was discussion of consent, and that line of if it is consensual, is this truly a violation? And I think that as jail, it's maybe not so much defined by legal concepts as it is the inmate's sort of changing ideas and understandings of whether he's been a victim. I don't know what you said. Not defined by legal concepts. Everybody apparently agrees that these sexual relations were absolutely unlawful as a matter of state law. What I'm trying to figure out, what I was asking Mr. Cade, is what makes them unlawful as a matter of constitutional law. You asked Mr. Cade about whether there was any evidence that these were… I'm not asking about evidence. I am asking about law. What makes sexual relations between prisoners and guards a violation of the Constitution of the United States? And that's not particular facts. I guess I would say, and I don't want to argue against myself, because if that is the position that this court wants to take, I would welcome it. But I believe that there is harm being done to the inmate. There are a lot of things that are illegal under state law because the state believes that harm results from them. But you're surely not saying that every state law identifies a violation of the Constitution of the United States, right? Right. But as the 14th Amendment requires for pretrial detainees, there can be no harm done to them. And in this kind of situation, I don't think anybody has ever felt comfortable saying sexual assault that is on its face consensual is not in some way harming them. If it's consensual, it is not a sexual assault, although it may be a violation of state law. There's no contention, I take it, that Neldener was under the age of consent. No. Right? This is not a statutory rape case. No. Yeah. Well… But, of course, during his deposition, although at the time of the acts contemporaneously he was consenting, during his deposition he sort of changed course and said things that suggested he regretted it, he was upset, he felt groomed. I think a lot of people who engage in sexual relations regret it afterwards without making those relations a violation of the Constitution of the United States. True, except that Mr. Neldener was in the custody and control of Taylor County, whereas other people who regret what they may have done with their romantic partner are not. And so I think that places this kind of contact in a different framework. Do you have… Do you? The same kind of question I ask Mr. Cate. Are you aware of any authority by the Supreme Court or U.S. Court of Appeals that says that all sexual relations between prisoners and guards violate the Constitution? Of course not. Of course not. Okay. Do you think in any way that if he were coerced… What if she took out her gun and put it to his… I think the facts of the contact are very important. And if she's obviously… If she's putting a gun to his head and she is forcing herself on him, we have a violent act that would, I think, fall well within the harm that is prohibited by the 14th Amendment. It might. That's why I asked Mr. Cate if he was arguing that, because I didn't see any allegations here that she did force herself on him. And I guess my… It's a sensitive area because my role is to look at it and see what he is saying he felt about that encounter, and if he says after the fact… Your role should be to make sure the guard was criminally prosecuted for a violation of state law. I think that, I mean, if the court wants to say that consensual sex between an inmate and a guard is… It's not a question of what the court wants to say. It is that a case like this, at a minimum, needs two things. There has to be an underlying violation of the federal constitution, and then there has to be a duty of some kind requiring other people to intervene to protect against that kind of violation. And I'm worried about both stages. It's not what the court wants to do. It's what the law requires for a claim like this to succeed. And I think it is maybe then our mistake to look at prior jurisprudence and interpret that as creating a rule that sexual contact… But you just told me that you're not aware of any decision by the Supreme Court or any court of appeals saying that there is such a rule. Right. And I'm not aware of it either. I think it is… I looked, couldn't find it. It may be there. All the hundreds of thousands of cases decided something may be there. But I looked and couldn't find it, and you apparently couldn't find it either. No. And I think our focus has been on that second element, the intervention. Particularly because in this case, that has been the focus of the argument, that these guards knew of this incident and did nothing. Or that they had awareness of facts that should have prompted them to report. And that simply is not the case. Do you think there ever was a moment when the risk was obvious enough to Officers Scholes, Bernasse, and Sackman that had they not taken reasonable steps to abate the risk, that some sort of, I don't know, liability would have attached? I think had they not reported it on the date that they did, that may have created some liability. Assuming, for the sake of argument, that the contact between Ms. Cheever and Mr. Neldner does violate the Constitution. But up until that date and that point, and even through that date and that point, nobody had any observations, overhearings, nothing of any kind of sexual contact or flirtatious contact in any way, shape, or form between these two individuals. Okay, well, if someone did a really careful reading of Neldner's texts, might that have apprised the prison of the sexual abuse of it earlier? But then again, does a prison have an obligation to read every prisoner text or correspondence to ferret out abuse? I'll answer that in two ways. One, the texts are not part of the record in this case, so I don't have any to refer to specifically. But two, from the ones that I have seen, absolutely not. There is no way, and even Mr. Neldner testified, that the guards would have had to, quote, read between the lines and make assumptions in order to reach a conclusion that the person he was texting with was in any way connected to the jail. There was absolutely nothing in the text messages. And, I mean, when you've got an inmate who's text messaging with a romantic partner and he's incarcerated, oftentimes they're talking about fantasies, talking about things that aren't actually happening. And so, you know, a guard reading them kind of has to take them with that grain of salt and that face value. But even with that, I don't think that there was any obligation for these officers to read through and start creating narratives in their own mind about what might be happening or who this could be. That it would be patently unreasonable, if that was expected of officers, to jump to conclusions and start wondering, well, maybe this person who's identified as Lovey, who doesn't have a phone number I recognize and isn't talking about anything that seems familiar to me, oh, but what if that is one of my coworkers? There was just absolutely nothing other than Ms. Cheever wearing makeup and dressing more nicely, eventually. And I have to say, I don't think that that in any way, shape, or form would prompt anybody to think that somebody is at any kind of heightened risk of sexual assault either, even though their training says, you know, keep an eye out for this. Simply changing your hairstyle or deciding you want to try a new makeup look does not make a woman a likely sexual predator. Say Kevin for them. And I do have to just correct Attorney Cade that there was absolutely no conversation between anyone at any point in time, Officer Sackman and Officer Scholes, where Officer Scholes said, you should report this. The record is very clear that she said, oh, I overheard them talking about a Packers game and weekend plans. Officer Scholes said, hmm, it wasn't part of that conversation. I didn't see it, but if you feel it's reportable, you should report it. If not, don't. That was the extent of that conversation. Comments about, oh, they didn't do it out of fear of embarrassment, that is entirely unsupported by the record. There is absolutely nothing in the record to support any of those sort of characterizations. This truly is a very straightforward and simple sort of evidentiary record that absolutely no one had any inkling this was happening until the day that they decided to report it, and then they did that immediately. There was nothing that would have given rise to any duty to intervene. Nobody had any sort of forewarning. This is not a case where there was a string of prior incidents at this jail, whether it be between officer and officer. There was no tear talk or sexualized sort of environment. This was the first incident of its kind. Officer Cheever was a very well-respected officer who unfortunately took a wrong turn, but prior to that was very effective in dealing with inmates and talking with them and giving them sort of a respectful ear, and it helped the jail function. There is simply nothing that any of her coworkers saw or should have seen or should have imagined or jumped to any conclusions that these two people were engaged in an inappropriate relationship. The only other point that I wanted to touch on was the arguments about 895 and that indemnification. I don't know if there is ever a situation where sexual assault, as that is defined by state law, could be within the course and scope of employment for a corrections officer. Yes, they were going to a medication room. Yes, that was part and parcel of her obligation and duties as a corrections officer, but at that point where she diverted from grabbing a can of Tylenol to taking her pants off, I think it's a pretty bright line. There is absolutely no question that that was not actuated by any purpose to serve her employer, and her declaration in the record confirms this, that absolutely all sexual contact that she had with Mr. Neldner was entirely motivated by her personal interests and was in no way designed to effectuate any sort of goals for her employer. So to the extent that that argument has sort of come up in the briefing and taken a bit of a center stage, it is a non-starter. There is simply no valid argument to say that having sex with someone in a medication room has anything to do with your job as a corrections officer. If anybody has any questions, I'm happy to answer them. Otherwise, thank you very much, and I ask that you affirm the district court's ruling. Thank you, counsel. Mr. Kaye. A couple of points. First, I want to read a quote. To the contrary, their theory of Monell liability roots itself in an action, in gaps in the county's sexual abuse policy and its failure to properly train the jailers in the face of obvious and known risk to female inmates. That's from Pope County. What is the difference because it is a man? Because it's not just male-on-female sexual assault. It could be female-on-male sexual assault. It could be same-sex sexual assault. So if we're not going to look at dissents and we're going to follow the law under Pope County, we at least have liability because their policies had nothing in there directing the other officers, the other guards, when you see something, say something. And that is exactly why in Pope County, even though they didn't sue the other guards, they held the policy was ineffective. Mr. Kaye, what if any evidence is there in the record that this relationship or the sexual activity between the guard and the inmate was not consensual? Is there any evidence? Well, again, Judge Lee, I think when we start talking consent, my client is in love with Ms. Cheever. He thinks he had a relationship. He thinks it is something. We would all look at that and say, you're crazy. How can you develop a relationship with a guard who could determine when you eat, how you eat, when you sleep, what you do? So do we say that's consent? I don't know how you can make that argument. That to me actually is a factual issue. A jury would have to then turn around and say whether that's consent. Certainly, Ms. Cheever admitted because she stipulated to judgment that there was a violation. She knew it. And she was sentenced. A point that was made is that there are no texts in the record. That's wrong. The texts were submitted into the record. Judge Griesbach had, I'm sorry, Judge Conley had those in the record and they were cited. And finally, I do think this is an issue at least to deliberate indifference because the guards just, they didn't say anything. They just said, eh, we'll investigate on our own. And there was nothing that allowed them to do that. Thank you. Thank you, counsel. Case is taken under advisement.